UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*16 CV 7550*

------------------------------------------------------------X

SYED KIRMANI,

                                        Plaintiff,                          Case No.: _____

        - against –

BILL WOLF PETROLEUM CORP.,
WILLIAMSBRIDGE ROAD REALTY CORP.,                    **COMPLAINT**
and CARY WOLF,

                                        Defendants.

------------------------------------------------------------X

*JUDGE KARAS*

        Plaintiff Syed Kirmani, by and through his attorneys, Oxman Law Group, PLLC, brings

this civil action against Defendants Bill Wolf Petroleum Corp., Williamsbridge Road Realty

Corp. and Cary Wolf, seeking a temporary restraining order, preliminary and permanent

injunctive relief, damages, and attorneys' fees, and in support thereof alleges as follows:

## INTRODUCTION

        1.      This is an action brought by Plaintiff pursuant to the Petroleum Marketing

Practices Act, 15 U.S.C. § 2801 *et seq.* (the "PMPA"), challenging acts committed by

Defendants against Plaintiff amounting to improper termination and non-renewal of a franchise

agreement and lease agreement, and for breach of those same agreements under New York law.

        2.      Defendants, well-seasoned participants in the petroleum distribution business,

improperly and in bad faith attempt to skirt the strictures of the PMPA by omitting the word

"franchise" from the operative contracts, even though those contracts, and the actions of the

parties, unquestionably evince and amount to a franchise agreement and franchise relationship

between the parties.  As such, Plaintiff has been damaged and is now at risk of losing the

business that he spent over ten years building.

## PARTIES

3.    Plaintiff Syed Kirmani is an individual residing at 89 Shamrock Hill Drive, Wappingers Falls, New York 12590.

4.    Defendant Bill Wolf Petroleum Corp. is a New York corporation engaged in the sale and distribution of petroleum products, with its principal place of business at 125 Jericho Turnpike, Suite 401, Jericho, New York, 11753.

5.    Defendant Williamsbridge Road Realty Corp. is a New York corporation with its principal place of business at 125 Jericho Turnpike, Suite 401, Jericho, New York, 11753.

6.    Defendant Cary Wolf at all relevant times was and is the Owner, President and Chief Executive Officer of Defendant Bill Wolf Petroleum Corp. with offices at 125 Jericho Turnpike, Suite 401, Jericho, New York 11753.

## JURISDICTION AND VENUE

7.    Jurisdiction of this Court arises under the PMPA, 15 U.S.C. § 2801 *et seq.* and by the provisions of 28 U.S.C. § 1337, relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

8.    The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Venue is proper pursuant to 29 U.S.C. § 1391(b)(1) and (c), in that Plaintiff maintains offices, conducts business and resides in this district, the property that is the subject of the franchise and lease at issue is situated in this district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## FACTS

10.  Since approximately 2004, Plaintiff has operated a gas station located at 2007 Williamsbridge Road, Bronx, New York, 10461 (the "Station"), executing franchise and lease agreements with Defendants in 2004, 2010 and 2011.

11.  On or about August 1, 2011, Plaintiff and Defendant Cary Wolf, on behalf of Defendant Williamsbridge Road Realty Corp. ("Williamsbridge Realty"), entered into a lease and rider dated as of August 1, 2011 (the "Lease and Rider") that continued Plaintiff's lease and franchise of the Station.  That Lease and Rider are attached hereto as Exhibit "A".

12.  Pursuant to the Lease and Rider, the monthly rent due from Plaintiff, as lessee/franchisee, to Williamsbridge Realty, through Defendant Wolf, as lessor/franchisor, is $14,120.00 per month.

13.  The Lease and Rider also require Plaintiff to pay an additional $1,200 monthly "Equipment Fee" relating to the "maintenance of Station equipment."  (Lease and Rider ¶ 43(g)).

14.  The Lease and Rider require that the Station "be used and occupied only for the sale of gasoline and the servicing of motor vehicles and motor repairs incidental thereto, and for no other purpose."  (Lease and Rider ¶ 41).

15.  The Lease and Rider preclude Plaintiff from obtaining petroleum products from companies not designated by Defendants:  "Tenant will not, nor will he permit anyone else to store, handle, sell, offer for sale, advertise for sale, use or permit to be used upon the Premises or any part thereof or adjacent thereto, any gasoline, oil or other petroleum products other than that supplied by such company or companies as the Landlord shall designate.  It is understood that Landlord may from time to time, change the company or companies it designates and that this

right to change is a vital part of this agreement without which Landlord would not enter into this Lease." (Lease and Rider ¶ 48(a)).

16.  The Lease and Rider require Plaintiff to obtain petroleum products only from those companies designated by Defendants: "It is further understood and agreed that the said Tenant shall purchase or acquire from the company or companies duly designated by Landlord, all his requirements of gasoline, oil or other petroleum products." (Lease and Rider ¶48(b)).

17.  The Lease and Rider require Plaintiff, if Defendants so request, to "execute the Retailer Sales Agreement and other agreements required by the gasoline company or companies designated by Landlord." (Lease and Rider ¶48(e)).

18.  In addition to mandating and/or precluding the sale of certain trademarked petroleum products, the Lease and Rider specifically mandate the manner in which the Station was operated, including hours, employees and signage.

19.  In particular, the Lease and Rider state that "The Tenant agrees actively to conduct a gas station upon the Premises seven days per week twenty-four (24) hours per day." (Lease and Rider ¶ 48(d)).

20.  The Lease and Rider also provide that, "Tenant agrees that it will require and will see to it, that all gasoline attendants at this service station will be neat in appearance, properly uniformed at all times, and speak fluent English, so that they can assist motorists and be able to communicate with gasoline customers." (Lease and Rider ¶48(f)).

21.  The Lease and Rider state: "Tenant shall neither place, or cause or allow to be placed, any sign or signs of any kind whatsoever at, in or about the Premises or any other part of same, except in or at such place or places as may be indicated by the Landlord and consented to by the Landlord in writing.  In case the Landlord or the Landlord's representatives shall deem it

necessary to remove any such sign or signs for any reason whatsoever the Landlord shall have the right to do so." (Lease and Rider ¶ 72).

22.   As of September 14, 2004, pursuant to Defendants' requirements, Plaintiff operated the Station as a BP franchise and purchased Amoco petroleum products from Defendant Bill Wolf Petroleum Corp.

23.   In approximately late 2006, Defendants became distributors of Shell petroleum products.  However, because there was a Shell gas station located in close proximity to the Station, Defendants required that Plaintiff convert the Station to a Valero franchise and required that Plaintiff obtain fuel through S.O.S. Fuels, located in Tuxedo Park, New York.

24.   Defendants also designated Crown Petroleum Transportation LLC as Plaintiff's fuel carrier during this time period.

25.   From approximately 2007 through 2011, per Defendant Wolf's instruction, Plaintiff would purchase fuel from S.O.S. Fuels.

26.   Upon information and belief, during this time period, unbeknownst to Plaintiff, Defendant Wolf was improperly dictating and inflating the fuel prices sold to Plaintiff from S.O.S. Fuels, taking a cut of the sale money from S.O.S. Fuels, thereby multiplying his own profits while crippling Plaintiff's business.

27.   Defendants' inflation of the S.O.S. Fuels prices resulted in Plaintiff receiving little to no profit after expenses.

28.   Finally, in 2011, Wolf gave permission to Plaintiff to obtain petroleum products on his own, in exchange for a monthly rent increase from $9,750.00 to $14,120.00, among other things, at which time the parties negotiated and executed the Lease and Rider.

29.  Notably, the 2011 Lease and Rider is in all material respects (other than rent amount) identical to the 2004 and 2010 leases and riders relating to the Station, during which Plaintiff was required to and did obtain petroleum products through Bill Wolf Petroleum and S.O.S. Fuels.

30.  Pursuant to the Lease and Rider, Defendants precluded Plaintiff from operating a Shell franchise at the Station because of the Station's close proximity to Defendants' Shell station.

31.  Pursuant to the Lease and Rider, Defendants designated SNK Petroleum Wholesalers as Plaintiff's distributor, but the Lease and Rider maintained that "It is understood that Landlord may from time to time change the company or companies it designates, and that this right to change is a vital part of this agreement without which Landlord would not enter into this Lease." (Lease and Rider ¶48(a)).

32.  The Lease and Rider also maintained that Plaintiff was precluded from selling "any gasoline, oil or other petroleum products other than that supplied by such company or companies it designates." (Lease and Rider ¶48(a)).

33.  Thus, as of August 2011, Plaintiff converted the Station to a Gulf franchise.

34.  From August 2011 to date, upon permission of Defendants, Plaintiff obtained petroleum products through SNK Petroleum Wholesalers, a Gulf distributor of which he is President.

35.  During this time period, up to and including 2014, Defendants continued to designate, and Plaintiff continued to use, Crown Petroleum Transportation LLC as the Station's fuel carrier.

36. At all times from August 2011 to date, Plaintiff has promptly paid rent and Equipment Fees in full, even though Plaintiff has several times requested explanation and/or invoices from Defendants evidencing their expenses incurred relating to maintenance of Station equipment, to no avail.

37. At all times from August 2011 to date, Defendants continued to exercise authority and control over the Station pursuant to the Lease and Rider, including, but not limited to, precluding Plaintiff from obtaining petroleum products from any Shell distributor and precluding Plaintiff from operating the Station as a Shell franchise, mandating that the property be used as a gas station, and controlling the signage at the Station.

38. For example, in 2014, after Plaintiff placed a Gulf sign at the Station, a representative sent by Defendant Wolf physically came to the Station and took down the sign, emphasizing to Plaintiff that pursuant to the Lease and Rider Plaintiff is required to seek permission before installing signage.

39. Throughout the time period that Plaintiff operated the Station, including from September 2011 to date when the Station converted to Gulf, Plaintiff expended substantial time, effort, and money into making the Station a profitable franchise.

40. As a result of Plaintiff's efforts, the Station is now an extremely successful franchise.

41. After watching Plaintiff spend over ten years building the Station into a valuable franchise, Defendants now attempt to capitalize upon and improperly benefit from Plaintiff's hard work by construing the relationship between the parties, the Lease and Rider, and the Station, as nothing more than an ordinary real estate rental relationship and transaction.

7

42.    Upon information and belief, Defendants' motivation for doing so is in order to take over, operate, and profit from the Station themselves.

43.    By letter dated August 24, 2016, Defendants provided Plaintiff with a "Notice of Lease Termination," purporting to terminate the parties' arrangement and stating that the lease concluded as of August 31, 2016 and that Plaintiff must vacate the Station by September 30, 2016. That letter is annexed hereto as Exhibit "B".

44.    The August 24 letter construes the Lease and Rider as nothing more than a simple real estate lease, making no mention of the PMPA, the franchise arrangement between the parties, or the nature of their business.

45.    Upon information and belief, on or about September 2016, a representative of Defendant came to the Station and informed Plaintiff's employees that the Station was closing at the end of the month and that they would be "out of a job." As a result, at least one employee has quit.

46.    Upon information and belief, Defendants are well aware of the requirements of the PMPA, including its strictures concerning termination and/or nonrenewal, its 90-day notification requirement, and its requirement that Defendants make a bona fide offer for Plaintiff's purchase of Defendants' interest in the Station. *See* 15 U.S.C.A. §§ 2802, 2804.

47.    Indeed, upon information and belief, Defendant Wolf is heavily involved in petroleum distribution and sales, as the principal of Defendant Bill Wolf Petroleum Corp., a New York corporation that has been in the business of petroleum sales and distribution since 1965, Jericho Wholesale LLC, another motor fuel distributor, and other such companies.

48.    Although the Lease and Rider are artfully crafted to appear as a standard real estate lease, and deliberately omit the term "franchise," the plain language of the Lease and

Rider as set forth herein constitutes a franchise, as defined by Sections 2801 and (1)(a)(iv) and (1)(B)(i) of the PMPA.

49.    The Lease and Rider also constitute a franchise as defined by Section 2801(B)(ii)(I) as "any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed under a trademark owned or controlled by a refiner."

50.    The relationship between the parties herein constitutes a "franchise relationship" pursuant to Section 2801(2) of the PMPA, defined as "the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise."

51.    The Station constitutes a "leased marketing premises" pursuant to 15 U.S.C.A. § 2801(9), defined as a "marketing premises owned, leased, or in any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of motor fuel."

52.    Defendants constitute "franchisors" and "distributors" as defined by the PMPA, 15 U.S.C.A. §§ 2801(3) and (6).

53.    Plaintiff constitutes a franchisee, distributor and retailer, as defined by the PMPA, 15 U.S.C.A. §§ 2801(2) (6) and (7).

54.    Put simply, Defendants cannot and should not be permitted to skirt the requirements of the PMPA by merely omitting the formal term "franchise" from the Lease and Rider.  The business relationship between the parties, the terms of the Lease and Rider, and the nature of the Station all unequivocally give rise to a franchise relationship governed by the PMPA.

**CAUSES OF ACTION**

**COUNT I**

**(PMPA: Damages)**

55. Each of the preceding paragraphs is incorporated herein by reference.

56. The Lease and Rider establish a "Franchise" and "Franchise Relationship" as defined by the PMPA, § 2801.

57. At all relevant times herein Defendants directed the manner in which the Station could be operated, including but not limited to dictating the brand and type of petroleum products that could and could not be sold, the signage at the Station, attendant appearance and language, hours of operation, and the type of training and schooling Plaintiff and his employees were to attend.

58. Defendants, as franchisors, have purported to terminate the Lease and Rider.

59. The PMPA strictly regulates the requirements for a franchisor to terminate the franchises of retailers of motor fuel, such as Plaintiff.

60. Defendants' Termination Notice dated August 24, 2016 improperly terminates and fails to renew the Lease and Rider.

61. Defendants did not terminate and/or renew the Lease and Rider pursuant to any of the grounds set forth in 15 U.S.C. § 2802(b)(2) and (b)(3).

62. In purporting to terminate and/or fail to renew the Lease and Rider, Defendants did not meet the notification requirements of 15 U.S.C. § 2804.

63. Accordingly, Defendants have violated the PMPA and are in willful disregard of the requirements of that law and the rights of Plaintiff thereunder.

64.    The PMPA, 15 U.S.C. § 2805(d)(1), permits the franchisee to recover actual damages, exemplary damages, reasonable attorneys' fees, and expert witness fees.

65.    By reason of the foregoing, Plaintiff is entitled to a judgment of actual and exemplary damages, together with reasonable attorneys' fees and expert witness fees.

## COUNT II
### (PMPA:  Equitable Relief)

66.    Each of the preceding paragraphs is incorporated herein by reference.

67.    At all relevant times herein Defendants directed the manner in which the Station could be operated, including but not limited to dictating the brand and type of petroleum products that could and could not be sold, the signage at the Station, and the type of training and schooling Plaintiff and his employees were to attend.

68.    Under 2805(b)(1) of the PMPA, a district court shall grant such equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of § 2802 of the PMPA, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief.

69.    Under 2805(b)(2) of the PMPA, a district court shall grant a preliminary injunction to remedy the effects of a failure to comply with the requirements of 2802 if (i) the franchisee shows that the franchise of which he is a party has been terminated and there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and (ii) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

70.     Defendants purported to terminate and/or fail to renew the Lease and Rider and, in doing so, failed to comply with the requirements of the PMPA, 15 U.S.C. § 2802.

71.     There exist serious questions going to the merits of whether Defendants failed to comply with the requirements of the PMPA, 15 U.S.C. § 2802.

72.     If the court does not grant Plaintiff preliminary injunctive relief, Plaintiff's business at the Station will be destroyed.

73.     By contrast, if the court grants preliminary injunctive relief preventing the termination of the Lease and Rider, Defendants will receive the benefits of its bargain, as Plaintiff will continue to pay rent under the Lease and Rider.

74.     Accordingly, injunctive and other equitable relief are appropriate to prevent the termination of the franchise and remedy Defendants' failure to comply with the requirements of the PMPA, 15 U.S.C. §§ 2802 and 2804.

75.     Plaintiff is entitled to preliminary and permanent injunctive relief:  (i) enjoining Defendants from terminating the Lease and Rider; (ii) ordering Defendants to engage in a good faith negotiation for the renewal of the Lease and Rider; (iii) ordering Defendants to renew the Lease and Rider with fair terms; (iv) enjoining Defendants from taking any actions to interfere with Plaintiff's operation of the Station; (v) enjoining Defendants from removing any equipment or improvements located at the Station; and (vi) enforcing the notification requirements of § 2804.

## COUNT III

### (Breach of Contract)

76.     Each of the preceding paragraphs is incorporated herein by reference.

77.     At all relevant times herein, the Lease and Rider are valid contracts.

78.   Defendants had contractual obligations under the Lease and Rider as set forth herein.

79.   Plaintiff performed all of his obligations under the Lease and Rider, and all conditions precedent have been satisfied.

80.   Defendants have failed to comply with their contractual obligations as set forth herein, resulting in substantial damages and the loss of future profits to Plaintiff in an amount to be determined at trial.

## COUNT IV

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

81.   Each of the preceding paragraphs is incorporated herein by reference.

82.   A duty of good faith and fair dealing is implicit in every contract under New York law.  Accordingly, the Lease and Rider contain an implied warranty of good faith and fair dealing which provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the Lease and Rider.

83.   Plaintiff performed all of his obligations under the Lease and Rider, and all conditions precedent have been satisfied.

84.   The acts and omissions of Defendants alleged herein constitute material breaches of Defendants' implied duty of good faith and fair dealing.

85.   Defendants failed to comply with the Lease and Rider, including but not limited to, (i) improperly terminating and not renewing the Lease and Rider without just cause; (ii) refusing to negotiate in good faith an extension of the Lease and Rider; (iii) improperly attempting to capitalize on Plaintiff's work in building up and profiting from the station; and (iv)

improperly and intentionally construing the Lease and Rider and the parties' relationship as falling outside of the PMPA.

86. Defendants also devised a coercive and unconscionable rent structure designed to prevent Plaintiff from making a profit, including but not limited to charging Plaintiff $1,200.00 per month in "Equipment Fees," even though Plaintiff, and not Defendants, have paid to maintain the Station's equipment.

87. Defendants' breach of the implied covenant of good faith and fair dealing has resulted in substantial damages and the loss of future profits to Plaintiff in an amount to be determined at trial.

## COUNT V
### (Unfair Competition)

88. Each of the preceding paragraphs is incorporated herein by reference.

89. Defendants, by their aforementioned conduct, have acted unfairly with respect to Plaintiff's rights in the Station.

90. Defendants are attempting to misappropriate Plaintiff's rights in the Station and its franchise for their own commercial advantage.

91. Defendants have acted in bad faith by their aforementioned conduct, including, but not limited to, the efforts to remove Plaintiff from the Station, informing Plaintiff's employees that the Station was ceasing operations at the end of September, and charging unconscionably high rent.

92. Defendants' aforementioned conduct has and threatens to immediately and irreparably harm Plaintiff.

93.   By reason of the foregoing, Plaintiff has sustained significant damage, including without limitation, the potential loss of his business at the Station, money damages related to rent and lost profits, and Plaintiff is further entitled to injunctive relief as well as punitive damages.

## COUNT VI
### (Promissory Estoppel)

94.   Each of the preceding paragraphs is incorporated herein by reference.

95.   At all relevant times herein Defendants directed the manner in which the Station could be operated, including but not limited to dictating the type of petroleum products that could and could not be sold, the signage at the Station, the hours of operation at the Station, and the type of appearance, training and schooling Plaintiff and his employees were to attend.

96.   Defendants promised and represented to Plaintiff that they would operate as franchisors, including but not limited to designating the companies from which Plaintiff could purchase gasoline, oil and other petroleum products.

97.   Defendants promised and represented to Plaintiff that Plaintiff could continue to operate the station so long as Plaintiff did not sell and/or advertise Shell Gasoline products and services.

98.   Plaintiff reasonably and justifiably relied on these promises in investing substantial work and money into the station as well as undergoing schooling to become a dealer in certain petroleum products.

99.   Based on the foregoing, Defendants are estopped from terminating and/or failing to renew the Lease and Rider.

100.  By virtue of Defendants' failure to abide by their promises, Plaintiff has suffered and continues to suffer damages as set forth above.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands the following relief:

a)      Demands a jury trial to determine liability and damages;

b)      Pursuant to 15 U.S.C. § 2801 *et seq.*, that this Court issue permanent and preliminary injunctions against Defendants: (i) enjoining Defendants from terminating the Lease and Rider; (ii) ordering Defendants to engage in a good faith negotiation of the renewal of the Lease and Rider; (iii) ordering Defendants to renew the Lease and Rider with fair terms; (iv) enjoining Defendants from taking any actions to interfere with Plaintiff's operation of the Station; (v) enjoining Defendants from removing any equipment or improvements located at the Station; and (vi) enjoining Defendants to comply with the notice requirements of the PMPA.

c)      That this Court enter a judgment in favor of Plaintiff and against Defendants, and award Plaintiff actual damages (including, without limitation, lost profits and the diminution of the value of its business), exemplary damages, punitive damages, costs, interest, attorneys' fees, expert witness fees, and all other damages recoverable under law in an amount to be determined at trial, but believed to be in excess of $1,000,000.00.

Dated: White Plains, New York

September 27, 2016

OXMAN LAW GROUP, PLLC
*Attorneys for Plaintiff*

By:_____
          MARC S. OXMAN
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 422-3900
(914) 422-3636 (Fax)
moxman@oxmanlaw.com